# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **LESTER WALLACE,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:04-cv-78 (HL) |
| | : | |
| **GEORGIA DEPARTMENT OF** | : | |
| **TRANSPORTATION,** | : | |
| | : | |
| Defendant. | : | |

_____

# ORDER

Before the Court are a Motion for Partial Reconsideration (Doc. # 65) and a Partial Motion for Summary Judgment (Doc. # 66), both filed by Defendant Georgia Department of Transportation ("GDOT").  For the reasons set forth below, both Motions are granted.

## I.   FACTS AND PROCEDURAL HISTORY

The Court described the facts of this case in detail in its previous Order granting GDOT's Motion for Summary Judgment in part and denying it in part and denying Plaintiff Lester Wallace's ("Wallace") Motion for Summary Judgment.  (See Doc. # 60 at 1-7.)  In that same Order, the Court gave GDOT leave to refile a motion for summary judgment within 30 days regarding Wallace's claims that GDOT (1) subjected him to a racially hostile work environment and (2) subjected him to discrimination pursuant to the American with Disabilities Act ("ADA").  (Id. at 33-34.)  As a result, GDOT filed a timely Motion for

1

Partial Summary Judgment (Doc. # 66) in which it moved that Wallace's hostile work environment and ADA claims be dismissed.  In addition, GDOT filed a Motion for Partial Reconsideration of the Court's August 23, 2005 Order (Doc. # 65), arguing that the Court had made a legal error by not dismissing Wallace's claim for disparate treatment in discipline under Title VII in its previous Order.  Wallace failed to file a response to either motion.

## II.    ANALYSIS

### A.    Hostile Work Environment

#### i.    Motion for Summary Judgment Standard

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party.  Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).  The Court may not, however, make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

2

demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 323 (quotation omitted).  If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law.  <u>Id.</u> at 324-26.  This evidence must consist of more than mere conclusory allegations.  <u>See</u> <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.

### ii.    Hostile Work Environment Standard

Not all offensive conduct in the work place constitutes a hostile work environment under Title VII.  <u>See</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-89 (1998).  To establish a hostile work environment claim, a plaintiff must show

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment . . . [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

<u>Miller v. Kenworth of Dothan</u>, 277 F.3d 1269, 1275 (11th Cir. 2002).

As the United States Court of Appeals for the Eleventh Circuit has recognized, "[t]he fourth element, 'whether the conduct was sufficiently severe or pervasive to alter the

conditions of employment and create an abusive working environment,' is the element that often tests the legitimacy of most harassment claims." <u>Barrow v. Ga. Pac. Corp.</u>, 144 Fed. Appx. 54, 56 (11th Cir. 2005) (quotation and citation omitted).  This is in large part because to establish harassing conduct was "severe or pervasive," an employee must not only prove that he subjectively perceived the environment as hostile, but also that a reasonable person would perceive the environment to be hostile and abusive. <u>See</u> <u>Watkins v. Bowden</u>, 105 F.3d 1344, 1355-56 (11th Cir. 1997).  The Supreme Court of the United States has held that this objective test is only satisfied when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (quotations and citations omitted).  Some of the factors a district court should consider, when determining whether a hostile environment was created, include (1) the frequency of the discriminatory conduct, (2) the severity of the discriminatory conduct, (3) whether the conduct is threatening or humiliating, and (4) whether the conduct reasonably interferes with the plaintiff's performance at work.  <u>Id.</u> at 23.

### iii.    Application

In its previous Order, the Court construed Wallace's allegations of hostile work environment to include six separate incidents: (1) an incident when his former supervisor, Mike Adams, stated, "You need to put Roger's shit aside and do yours because this is going to be your ass on the line, not Roger's;" (2) a written reprimand Wallace received for alleged

misuse of a GDOT computer;[1] (3) the investigation leading to the written reprimand; (4) what Wallace perceives as undesirable work assignments; (5) what Wallace perceives as unfair performance evaluations; and (6) what Wallace perceives as improper handling of his accommodation requests for hand and arm pain caused by repetitive mouse clicking.  (Doc. # 60 at 26.)  GDOT, as directed by the Court, analyzed each of the six alleged incidents. (Doc. # 66 at 5-10.)  GDOT's Motion for Summary Judgement concluded that Wallace's hostile work environment claim should fail because the record contains no evidence that Wallace was ever subjected to a racially hostile work environment, and alternatively, even if he had produced such evidence, the six incidents in question, alone or in aggregate, would not be sufficient to establish a hostile work environment.  (Id. at 5.)

Having considered the six alleged incidents and the totality of the evidence presented by Wallace, and assuming arguendo all of these allegations are true, the Court finds Wallace's claim fails because he is unable to establish either that such harassment was based on his race or that it was sufficiently severe or pervasive to alter the conditions of his

---

[1] One of the six incidents, the written reprimand that Wallace received for alleged misuse of a GDOT computer, also forms the basis for Wallace's disparate treatment in discipline claim, the disposition of which is discussed later in this Order.  In its August 23, 2005 Order, the Court requested that GDOT examine whether a plaintiff can incorporate his disparate treatment claims, which are grounded in tangible employment actions, into hostile work environment claims.  (Doc. # 60 at 26-27.)  GDOT, after engaging in such an analysis, concluded that while case law on the subject was "meager at best," the majority view appeared to disallow a plaintiff's borrowing evidence from a disparate treatment claim to support a hostile work environment claim, although a minority of courts had allowed this commingling.  (Doc # 66 at 6 n.2.)  However, because the Court finds that Wallace's six claims would be insufficient to support a hostile work environment claim, even assuming they were found to be supported by evidence and were permissible as they are currently styled, the Court need not and does not weigh in on this outstanding legal question in the Eleventh Circuit.

employment and create an objectively abusive and hostile environment.  As to frequency and severity, Wallace has come forward with only a handful of incidents, many, if not all, of which do not appear to be related to race at all and none of which are severe.  Similarly, whatever threat or humiliation, if any, contained in these incidents was, at most, minor, and Wallace has failed to produce sufficient evidence that this conduct has reasonably interfered with his performance at work.  During his deposition testimony, Wallace admitted that his supervisors had never made any derogatory comments based on his race.  (Wallace Dep. at 138-39.)  Wallace has fallen far short of presenting sufficient evidence to indicate his having been forced to endure a work environment where offensive conduct was "so commonplace, overt and denigrating that [it] created an atmosphere charged with racial hostility."  See Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521-22 (11th Cir. 1995).  Therefore, Wallace's hostile work environment claim is dismissed.

### B.    ADA Discrimination

#### i.    Motion for Summary Judgment Standard

This standard is set forth supra in section II(A)(i).

#### ii.    ADA Violation Standard

The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation job training, and other terms, conditions, and privileges of employment."  42 U.S.C.A. § 12112(a) (West 2005).  To establish a prima facie ADA violation, a plaintiff must

show by a preponderance of the evidence that he: (1) has a "disability" recognized by the ADA; (2) was "qualified" for his job, with or without reasonable accommodations; and (3) was subjected to unlawful "discrimination" because of his disability.  Id; Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004).  The Supreme Court of the United States, while emphasizing both its statutory language and legislative intent, has held that the ADA's "disability" definition should be "interpreted strictly to create a demanding standard for qualifying as disabled."  Toyota Motor Mfg. Ky., Inc., v. Williams, 534 U.S. 184, 197 (2002).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C.A. § 12102(2) (West 2005).  However, not all physical impairments rise to the level of a disability under the ADA.  See Hilburn v. Murata Elecs. N. Am., 181 F.3d 1220, 1226-27 (11th Cir. 1999).  Analyzing how to determine what constitutes a disability for the purposes of the ADA, the United States Court of Appeals for the Eleventh Circuit held,

> Disability under the first definition above, according to the Supreme Court, involves a three-step analysis. Bragdon v. Abbott, 524 U.S. 624 (1998). First, plaintiffs must be impaired. Next, the court must identify the life activity that the plaintiff claims has been limited and determine whether it is a major life activity under the ADA. The regulations interpreting the Rehabilitation Act of 1973 define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii). If not contained within these exemplars, the activity must be "significant" to everyday life. Bragdon, 524 U.S. at 638. Several courts, for example, have found that sleeping constitutes a major life activity. See Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir.

1999).    Finally,  the  court  must  determine  whether  the  impairment "substantially limits" that life activity.  The EEOC defines this phrase to mean "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1).

Rossbach, 371 F.3d at 1357.

In order to prove that an employer "regarded" a plaintiff as disabled, that plaintiff must establish any one of the following three requirements: (1) that he has a physical impairment that does not substantially limit any of his major life activities but was treated by his employer as constituting such a limitation; (2) that he has a physical or mental impairment that substantially limits one of his major life activities but only as a result of his employer's attitude toward such impairment; or (3) that he has no physical or mental impairment but is treated by his employer as having such an impairment.  Id. at 1359-60.  To determine whether a plaintiff has proven a prima facie case under the "regarded as" prong, a district court must consider (1) the nature and severity of the plaintiff's impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment.  See Gordon v. E. L. Hamm & Assoc. Inc., 100 F.3d 907, 912 (11th Cir. 1996).

###    iii.    Application

The Court finds Wallace has utterly failed to establish a claim under the ADA, as he is unable to satisfy the most fundamental requirement: he has not provided sufficient evidence to prove he has a disability recognized by the ADA or that he was regarded as disabled.  Wallace's alleged disability constitutes his right hand and arm pain in June of

2001, and a left hand and arm injury in the summer of 2002.  (Wallace Dep. at 142-44, 154, 165-66.)  These impairments, according to Wallace, caused him pain for approximately a year.  (Id. at 113.)  Also, they apparently impacted his ability to sleep, and for approximately one month Wallace was restricted by his doctor to limited repetitive work and no lifting over 10 pounds.

This same doctor, however, upon an initial examination of Wallace found no damage (id. at 154-55), and when the doctor lifted Wallace's work restrictions a month later, he determined Wallace had a "zero percent permanent partial disability rating."  (Id. at 156-57.)  Furthermore, by Wallace's own testimony, neither injury hindered him in any significant way.[2]  There is no evidence that even the slight inconveniences he did experience were any more than extremely short-term restrictions, and nor has he presented any evidence that he has suffered any permanent or long-term disability, such as is contemplated by the ADA.  See, e.g., Kay v. Lester Coggins Trucking, Inc., 141 Fed. Appx. 824, 827 (11th Cir. 2005) ("[Plaintiff's] only impairment, real or imagined, was neither severe, permanent nor long-term for purposes of the ADA.  It was temporary.").

Likewise, Wallace cannot prevail under a theory that GDOT regarded him as disabled.  Wallace has produced no evidence that GDOT erroneously perceived him to have a substantially limiting and significant impairment.  All of the evidence Wallace has provided

---

[2] In his deposition, Wallace admitted to a laundry list of activities which he was able to perform without complication.  Among them, he was never limited in his ability to walk, bend, stoop, sit, pull, lift (except for the one month period mentioned), see, hear, speak, breathe, learn, move, take care of his personal hygiene, fix his own meals, do laundry, do housework and drive himself to work most days.  (Wallace Dep. at 76-80, 155-64.)

9

indicates that GDOT's perception of his impairment was based entirely upon information Wallace had provided to GDOT: that he was restricted by his doctor to limited repetitive work and no lifting over 10 pounds for approximately a one month period.  The evidence further indicates Wallace's impairment was minor, temporary and had no apparent permanent or long-term impact.  Wallace's ADA claim can not be based on a "regarded as" theory.

Wallace has neither proven that he is disabled nor that GDOT regarded him as such. Because Wallace has failed to establish the first prong of his prima facie case of discrimination in violation of the ADA, the Court need not consider whether he was qualified for his job, with or without reasonable accommodations, nor whether he was subjected to unlawful discrimination because of his disability.  Therefore, Wallace's ADA claim is dismissed.[3]

### C.    Disparate Treatment in Discipline

#### i.    Motion for Reconsideration Standard

Reconsideration of a prior order is an extraordinary remedy, and should be employed sparingly.  See, e.g., Am. Ass'n of People with Disabilities v. Hood, 278 F. Supp.

---

[3] In its August 23, 2005 Order, the Court noted that the Eleventh Circuit has yet to address whether the Eleventh Amendment immunizes States from suits for monetary damages for violations of Title II of the ADA in the employment context.  (Doc. # 60 at 33.)  GDOT, in its Motion for Summary Judgment, opined that arguably, for the very reasons the Eleventh Circuit has determined that the Eleventh Amendment bars Title I ADA claims, the Eleventh Circuit would be likely to also bar Title II claims.  (Doc. # 66 at 10-11.)  However, GDOT concluded it was unnecessary for the "Court to make a determination regarding immunity vis a vis Title II of the ADA in the employment context, since Plaintiff cannot establish a prima facie case of discrimination under the ADA."  (Id. at 11.)  Because the Court agrees with GDOT on both points, it shall in fact make no such determination.

2d. 1337, 1339-40 (M.D. Fla. 2003).  Reconsideration is only proper if the movant has demonstrated that: (1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice.  See, e.g., McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1222-23 (M.D. Ga. 1997).  "[A] motion for reconsideration does not provide an opportunity to simply reargue an issue the Court has once determined.  Court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."  Hood, 278 F. Supp. 2d at 1340 (quotation and citation omitted).

### ii.   Disparate Treatment in Discipline Standard

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions or privileges in employment, because of such individual's race, color, religion, sex, or national origins."  42 U.S.C.A. § 2000e-2(a)(1) (West 2003).  Furthermore, "a plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside of the protected class."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  Therefore, a key component of a plaintiff's prima facie case in a Title VII disparate treatment case is to establish that he suffered an adverse employment action.  Examining exactly what constitutes an "adverse employment action," the Court of Appeals for the Eleventh Circuit explained,

11

> We have never adopted a bright-line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must have for it to be actionable . . . . [but it] is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action. . . . Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. . . . [Thus,] an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's actions is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238-39 (11th Cir. 2001) (citations and quotations omitted); see also Mariano v. Potter, No. CIV.A.04-0776WSB, 2006 WL 907772, at *15 (S.D. Ala. April 7, 2006) (collecting cases in 2006 where the Eleventh Circuit has refused to find an adverse employment action and noting the "test is stringent").

The Eleventh Circuit has found a negative work evaluation can constitute an adverse employment action under some circumstances.  See Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998).  However, "[t]he reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result." Summerlin v. M & H Valve Co., 167 Fed. Appx. 93, 97 (11th Cir. 2006); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001); Lucas v. W. W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001).   Considering whether criticisms of employees' job performances constitute adverse employment actions, numerous United States Courts of Appeals have emphasized this "tangible job consequences" requirement is a predicate for a

Title VII suit.  Davis, 245 F.3d at 1241-42 (collecting cases).  Likewise, the Eleventh Circuit has noted "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more actionable form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." Id. at 1241.

### iii.    Application

Here, GDOT seeks reconsideration on the grounds of manifest injustice and clear error.  (Doc. # 65 at 1 n.2.)  Specifically, GDOT asks the Court to address the issue of whether Wallace's written reprimand constitutes an adverse employment action as it applies to his Title VII disparate treatment in discipline claim.  (Id. at 1-2.)  Furthermore, GDOT asks the Court to reconsider whether Wallace provided sufficient evidence to constitute a triable issue as to whether GDOT's legitimate non-discriminatory business reasons are pretextual.  (Id. at 2.)

GDOT asserts that Wallace produced no evidence that he suffered an adverse employment action, as the only disciplinary action he was subject to was the receipt of a written reprimand, which neither materially altered the terms and conditions of his employment nor had a tangible adverse effect on his employment.  (Id.)  The Court acknowledges that it did not determine whether the written reprimand rose to the necessary level to constitute a disparate treatment violation under Title VII in its previous Order,[4] and

---

[4] While the Court did examine to a certain extent whether Wallace showed that he suffered an adverse employment action when it analyzed his retaliation claim, the Court never reached a

must necessarily consider this question now.

First, Wallace obviously did not lose his job as a result of his misconduct—his only punishment was to receive the aforementioned written reprimand. Second, Wallace admits that he lost no income as a result of this written reprimand. (Wallace Dep. at 129.) Third, Wallace further testified that he has never been denied a merit increase as a result of this reprimand. (Id. at 89.) Fourth, Wallace was later assured by David Crim, the District Engineer and Wallace's superior, that the written reprimand was in the past and could be overcome as long as the misuse of GDOT equipment did not continue and he did his job satisfactorily. (Crim Aff. ¶ 29.) Fifth, Wallace has provided no proof that the reprimand cost him any future raises or hindered his future job prospects.

Accordingly, the Court concludes Wallace has failed to prove that he suffered an adverse employment action, as the only disciplinary action he was subject to was the receipt of a written reprimand, which neither materially altered the terms and conditions of his employment nor had a tangible adverse effect on his employment. Having failed to consider this question in its earlier Motion for Summary Judgment, the Court acknowledges it committed a clear error of law in its previous analysis of Wallace's disparate treatment in discipline claim. Therefore, for the above stated reasons, the Court grants GDOT's Motion for Partial Reconsideration (Doc. # 65) and dismisses Wallace's claim for disparate treatment

---

conclusion because it found Wallace had failed to demonstrate a causal connection between any alleged adverse action and the protected expression. (See Doc. # 60 at 19-23.) Therefore, the Court answers the question of whether Wallace suffered an adverse employment action for the first time in this Order.

in discipline under Title VII.[5]

### III.   CONCLUSION

Defendant's Motion for Partial Reconsideration (Doc. # 65) is granted.  Defendant's

Partial Motion for Summary Judgment (Doc. # 66) is granted.

**SO ORDERED**, this the 23rd day of May, 2006.


s/        Hugh Lawson
**HUGH LAWSON, JUDGE**


pdl

---

[5] Finally, the Court notes that it would be disinclined to reconsider its earlier determination regarding pretext, since the purpose of a motion for reconsideration is not to offer a litigant the opportunity to reargue an issue that has already been determined.  However, the Court need not and does not reach that portion of GDOT's Motion for Reconsideration, due to its finding that it committed a clear error of law in its earlier analysis of Wallace's disparate treatment in discipline claim.